We'll hear an argument now in the case of CCC Intelligent Solutions against Tractable. Good morning. My name is Lazar Reynaud. Mr. Reynaud. Excuse me? Mr. Reynaud, please proceed. Yes. Thank you, Your Honor. May it please the Court. We're here to decide who decides, and helpfully here we have an arbitration provision that is extraordinarily broad and has a fully broad clause relating to the power of the arbitrator to make decisions in pretty much any aspect of the case. In fact, all of the conduct that's complained against Tractable in this matter would be covered by the arbitration agreement. There's no doubt about that. There's no doubt also that Tractable is the entity named J.A. Appraisal. You assert that over and over, but that doesn't mean there's no doubt about it. I've looked at the agreement. It doesn't name Tractable, right? You say, well, J.A. Associates is just an alias for Tractable. Is there any way that CCC could have known that from public documents? Well, it's not in the record whether they could have known that from public documents, but what we do know is that they contract from public documents. We know that they contract with 30,000 or so. If it's not in the record, it's not in the record. But that makes it very difficult for you to say it is undisputed that Tractable is a party to this contract when it is not only not identified anywhere in the contract. There is, so far as this record is concerned, no way that CCC could have known that J.A. was just an alter ego or another name Tractable called itself. Right. Well, there's also nothing in the record that they ever checked, Your Honor, like many clients that would run a DA. Usually the rule is no one has to defend himself against fraud. And we obviously don't. That's a pretty basic rule. Right. And we obviously, Your Honor, don't agree that there was any fraud here. We do take the court to the position that you have repeated lies about who the parties are and, indeed, about who the agent for J.A. is. Because it would have been very easy to trace Tractable at the supposed agent given his honest name rather than a phony name. Well, the record also shows that that agent, in fact, informed CCC that he was not using his legal name and that he was using an anglicized name, Jason Chen. And there was no follow-up in the e-mail trail that's in the record relating to him making that disclosure to CCC. But how would that get back? Doesn't get to Tractable. Yes, exactly. Well, whether it would or not, they said. Suppose Jones says, I'm the agent for J.A., but Jones isn't my real name, but he doesn't give his real name. How is CCC going to get to Tractable from that disclosure? Well, the question is whether it needs to be able to get Tractable for that disclosure in order for there to be a contract. Tractable has to become a party to the contract. Otherwise, there's no arbitration. The contract says it is not assignable, right? So unless Tractable is a party, the instant it is inked, it's not a party. And that depends, I think, on CCC being able to know that J.A. was just another reference to Tractable. Now, if there are public documents showing that, then I can imagine a good argument, right? Everybody knew there were public documents showing that Mark Twain was Samuel Clemens. But are there public documents, I think you've already said no, showing that J.A. was Tractable? No, Your Honor. And what we do have is the declaration from the person who signed it, Mr. Chen, saying they used that name for these purposes during his tenure at the company. There is no dispute that they couldn't use it. If you say, if you sign this contract, you can't later say privately, this is all complete gibberish, because we understood this the same way Lewis Carroll understood it in Jabberwocky, and therefore it doesn't bind us. Or privately, we understand the word yes to mean no. We, of course, didn't convey that to the other side. We understand the phrase this cannot be assigned to mean this is easily assignable. What people believe privately in the law of contract is irrelevant. It's the words and symbols exchanged between the parties that form the contract. And that's my problem. I'm trying to figure out whether there were any words, symbols exchanged between the parties that makes Tractable a party to this contract. That's my problem. Your Honor, our contention is that Tractable and J.A. appraisal are not separate entities. They are the same entity. That's what Tractable asserts. Yes. But that's just like saying, in my vocabulary, yes means no and the reverse. And it's true I didn't tell that to CCC. But since that's what I think, that's what's true. And that's not the way the law of contract works. Well, Your Honor, first of all, one, we would argue it's not an assignment and that if there were a question of whether there was an assignment or not, that would be a violation of the agreement clause that would be arbitrable in the first instance. But if we are correct, the J.A. appraisal is Tractable and Tractable is J.A. appraisal, which is what was alleged throughout the amended complaint and what the declaration in the record says, then you move to if there is a contract, because they signed a contract with companies that have all kinds of suit names. I represent companies all the time that have multiple names that everybody doesn't always know who they are and often people don't necessarily ask. Aren't there requirements, though, under Illinois Law of Corporations, Chapter 850, as to whether or not you can use a suit name? Well, we cite a couple of cases that say even if you fail to register your DBA or a suit name, you can still enforce your contract. And we cite cases, for example, you're a real estate broker and you never filed your DBA and you signed your contract under your DBA, you can still enforce your contract. There may be some penalty for failure to file a DBA. Our client, by the way, was in California. It signed a contract that has an Illinois provision. But under Illinois Law, it's very clear that even if you fail to register your DBA when you're supposed to register your DBA, the contract is still enforceable. So here, if you take our position that what has been alleged all along is that Tractable is J.A. appraisal and J.A. appraisal has no separate existence. The failure of Tractable to have not registered the DBA is not fatal to the existence of the contract. And we think CCC essentially concedes that when it comes up on appeal, when it switches for the first time to this issue of was this fraud in the factum or fraud that they didn't understand the nature of the agreement. And we think the law is very clear on that. They understood exactly what was in the contract. They drafted the contract. They drafted these arbitration provisions. They drafted every provision of the contract. Our client signed the form agreement. They performed under the contract for over a year. There is no evidence that your client signed the form agreement. You're just assuming the central issue in this case, which is that J.A. appraisal is Tractable. You're assuming that because you think that, that's binding on CCC. That's the problem. Is there some principle of state law that you're looking for that says that what one side to a contract believes or thinks and is never communicated to the other side is binding on the other side? That's the critical question, as I see it. Well, Your Honor, the cases that would go to that questionnaire are the cases that say even if you fail to register your DBA. I'm not asking about registering. I'm asking a general proposition about the difference between objective and subjective signs in the law of contract. Well, we contend this is an objective standard. Let's go back. I asked a concrete question about what case you would rely on for a state law principle that what one side believes in contract negotiations is binding on the other side, even if never communicated to the other side. Well, Your Honor, to me, I would say all of the cases that relate to fraud and the inducement would be in that category. I'm not saying I have a specific case. I'm asking for a concrete case, and you are, well, let's just say not supplying one. This is a fundamental principle. Anything that Corbin and Williston agree on about the law of contracts is pretty fundamental. They disagreed about everything else, but not this. Your Honor, I would cite to the restatement section 163 that we cited, and the example there that the court uses is if I were to represent that I was a wealthy individual who, in order to get a contract with you, and I misstate who I am in order to get the contract and in order to get credit, that that is fraud in the inducement. However, the comment says unless it affects the very nature of the contract, and then cites the UCC 2-4031A. Right, but it's saying that me misidentifying myself does not go to the very essence of the contract. And what goes to the essence of the contract is if you don't understand the contents of the contract itself. It's saying that if there's an identity issue, it can be fraud in the inducement unless the identity issue affects the very nature of the contract. Whether or not a party is an individual or a company is a party to the contract could go to the very nature of the contract, take it outside of the identity issue. I agree. Can I answer your question, Your Honor? Yes, please. As long as we're asking, you can answer. Okay. In that case, what they specifically identified, though, what does not fall in that category is me representing who I am in order to get you to sign the contract with me, Your Honor. That's exactly what the restatement says in section 163. Thank you, Your Honor. Thank you. Thank you very much, counsel. Mr. Garay. Thank you, Judge Easterbrook, and may it please the court. The district court correctly denied Tractable's motion to compel arbitration under a contract that Tractable never signed and refused to embrace the absurd notion that a party can conceal its identity by concocting a fake business to gain access to a competitor's trade secrets and then turn around and compel arbitration under the very product of its fraud. Just to be clear at the outset, we absolutely do dispute that J.A. appraisal was Tractable and that we knew that J.A. appraisal was Tractable, as Your Honor pointed out, Judge Easterbrook. And, Judge Easterbrook, it's not surprising that my friend was unable to cite a state law case supporting this position, but I would like to point the court to Gallupin v. Continental Casualty, which is a 1937 case by the Illinois Court of Appeals. And there what the court said on page 773 was, quote, there is no agreement where one party enters into the contract under a mistake as to the identity of the other party as where the party contracted has falsely represented himself to be another, end quote. That has been settled, Illinois law, for nearly a century. And as Judge Brennan indicated, you're exactly right, the issue as to the identity here really goes to the very nature of the instrument. And so, therefore, this does fall squarely within fraud and the execution as laid out in section 163 of the restatement. And the reason why it goes to the very nature of the agreement, Your Honors, is that CCC thought it was contracting with an independent appraiser, somebody that would use its trade secret and proprietary data to value and appraise vehicles. It had no idea that it was contracting, as tractable says it was, with one of its competitors who was going to seek access to its proprietary data to mine that data and reverse engineer a product that would drive CCC out of the business. It's hard to imagine a situation in which the identity of the contracting party would be more important. And that's why this case falls squarely within the fraud and the execution paradigm, not the fraud and the inducement paradigm. Fraud and the inducement deals with misrepresentations of that external facts when the parties understand the contract itself, such as a representation that someone was insolvent, which is the prime of pain case. This case goes to a term in the contract, the very contract, which is the identity of the customer, which is laid out in the very first paragraph of the agreement. It is repeated in the product schedule. And as Judge Easterbrook pointed out, the agreement itself specifically says that J.A. appraisal was not acting on behalf of anyone else. That's on Appendix 21 in the Non-Assignment Clause. It's also well settled under the Supreme Court precedent, this court's precedent and the precedent of other courts, that issues as to the existence, the very existence of a contract are for a court to decide, even when an arbitration clause itself states that issues as to the existence may be delegated to an arbitrator. The Supreme Court said that in the Granite Rock case. We believe that this court's decision in the Spear-Drake case recognizes the same principle. And other circuits, like the Third Circuit in the M.C. Construction case and the Fifth Circuit in the Ward's Syndicate case, has recognized that as well. And that makes perfect sense because arbitration fundamentally is a matter of consent. And where there is no contract at all between the parties because a contract was never formed, then there can be no consent to arbitrate and no basis to enforce any arbitration clause. This court in the Spear-Drake case put it slightly differently when it said, no consent, no power to arbitrate, no contract, no power to arbitrate. And that's exactly the case here. The threshold question that must be resolved and that must be resolved by a court first is whether or not any agreement ever existed or was ever formed between CCC and Tractable. And we don't have to convince you today that we're absolutely right about that, although we think we are. All we have to show you and what the district court found is that there is a triable issue as to whether or not any agreement was actually formed between the parties and that that is sufficient to deny the motion to compel. Judge Gettleman was actually exactly right about that. That rule disposes of this case and the court should affirm for this basis alone. Now, we think this court could decide simply that Tractable is not a party to the agreement because it did not sign the agreement and therefore cannot enforce the arbitration clause on that basis alone. That was the basis that Judge Gettleman reached. Tractable itself initiated this case by arguing in its motion to compel that it was not a signatory to the agreement, but tried to enforce it on agency and equitable estoppel principles. Judge Gettleman correctly rejected those arguments. Tractable has abandoned them on appeal. Its new argument that it can enforce it under a pseudonym is equally basis. In fact, the very treatise that it relies upon for that proposition specifically says that that rule does not apply in the case of fraud. An important fact that Tractable simply leaves out of its brief. The issue of whether there is fraud in the execution does go to the existence of the contract. If there is fraud in the execution, the agreement is void ab initio as if it never existed. And therefore, this does fall into the category of issues that go to the formation of the contract and whether any contract at all exists, which is one first and foremost for the courts to decide. Your Honor, whatever else is true in this case, the adoption of Tractable's position would create a perverse incentive for businesses or individuals to disguise their identities and contracting with others when the identity of that contracting party is, as was the case here, critical to the very nature of the agreement at issue. As Judge Gettleman put it, to say equity requires that result would make equity at first. But it would also make an absurdity of the law to reach that conclusion. No decision of this court, the Supreme Court, or any other circuit that we're aware of requires that result. And in fact, every decision, decisions like Granite Rock, Sphere Drake, MZ Construction, Lloyd's Syndicate, all recognize that Tractable's position must be rejected and that this is a matter for the court to decide before any arbitration agreement could be enforced. What do we do with the language, Mr. Garrett, in Sphere Drake that talks about it would be a claim of fraud in the inducement, which boils down to we wouldn't have signed the contract had we known the full truth about our trading partner, and that that would be a claim of fraud in the inducement, which would therefore go to the arbitrator. Right. Your Honor, I think what the court was getting at there is one thing to say we don't know the actual identity of our trading partner, who the customer is in the agreement. It's another thing to say we don't know everything about that trading partner. For example, Primate Payne is the classic fraud in the inducement case, and there you had a contract for consulting services, but the party represented that was solvent and would be able to comply with the contract. That turned out to be false, and that misstatement induced it into by entering into the contract. And so by saying we don't know everything about our trading partner, I think what the court meant is we don't know whether it's insolvent, or we don't know external facts about that trading partner. But that's fundamentally different than not knowing the actual agreement that you're signing, because the term in the agreement is fundamentally false, as here the identity of the customer. The example that the Third Circuit gave in the MZM construction case of fraud in the execution is where you're presented with a contract, you believe it's a contract for cheese, when in fact it's a contract for milk. And that's exactly this case. We were presented with a contract with JA appraisal, an independent appraiser, when in fact it was tractable behind the scenes, which faked JA appraisal. It's not a legitimate entity registered to do business in any state. Faked emails and phone calls, and misled that the head of tractable's product development was masquerading as JA appraisal. That mistake and fraud as to the identity of the customer goes to the heart of this agreement, it goes to the very term of the agreement, and makes this case a classic case of fraud in the execution, not fraud in the inducement. Thank you very much. The case is taken under advisement.